BERGMAN et al. v. KEARNEY, State Engineer.

(District Court, D. Nevada. March 8, 1917.)

No. A–46.

1. CONSTITUTIONAL LAW ⊜⇒93(1)—WATERS AND WATER COURSES ⊜⇒128— NATURAL WATER COURSES—STATUTORY REGULATION OF USE.

The Nevada Water Law of March 22, 1913 (St. 1913, c. 140), as amended in 1915 (St. 1915, c. 253), in providing that existing water rights acquired before its passage shall be ascertained and determined first by the state engineer and afterward by the district court as therein prescribed, is not unconstitutional, as depriving the holders of vested rights; but such provision is a proper and necessary one, to enable the state to ascertain and delimit new rights to be acquired under the act, and is within the legislative power.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 372–379.]

2. WATERS AND WATER COURSES ⊜⇒128—USE OF WATER FROM STREAMS— STATE REGULATION.

The appropriation for use of water from a stream, although the rights acquired thereby are recognized by both federal and state governments, is subject to regulation and control by the state, which in the exercise of its police power may provide efficient regulations covering the distribution and use of such water.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 143.]

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. COURTS ⬤�top366(1)—FEDERAL COURTS—FOLLOWING STATE DECISIONS.

If the question of the validity of a state statute involves merely its conformity to the state Constitution, the decisions of the highest court of the state are final and conclusive, and a federal court is reluctant to declare a state statute invalid on that ground before the question has been considered and determined by the state tribunal.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 956, 957, 967.]

4. CONSTITUTIONAL LAW ⬤�top42—DETERMINATION OF VALIDITY OF STATUTES—RIGHT TO QUESTION CONSTITUTIONALITY.

The court will hear only those objecting to the constitutionality of a statute who are affected by its alleged unconstitutionality in the particulars complained of.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 39, 40.]

5. CONSTITUTIONAL LAW ⬤�top80(1)—STATUTE REGULATING USE OF WATER—CONSTITUTIONALITY.

The Nevada Water Law of March. 22, 1913, as amended by St. Nev. 1915. c. 253, confers upon the state engineer supervisory power over the distribution and use of water from the streams of the state. As incidental to the exercise of such power it authorizes him, on notice to all parties in interest and after making surveys and maps of a stream and on a hearing, to ascertain and determine the rights of users of water from the stream. He is then required to file his order of determination, with the original evidence and transcript, with the district court, to apply to the court to have the matter set down for hearing and serve notice on all parties in interest. Pending the hearing, distribution of water is to be made in accordance with his order, unless a stay bond is filed and approved by the court. The order, claims of claimants, and exceptions to the order constitute the pleadings on which the case is to proceed as nearly as may be in accordance with the rules governing civil actions, and upon the evidence taken before the engineer and such further evidence as may be offered the court is to render a final decree determining the rights of users of water from the stream, from which decree an appeal may be taken to the Supreme Court. *Held*, that such provisions for hearing and determination by the state engineer are not in violation of article 3, § 1, of the state Constitution, as conferring judicial power on an administrative officer, since his determination has none of the finality of a judgment, but is merely a preliminary step in the proceeding which culminates in a final decree of the district court.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 140, 143, 147.]

6. CONSTITUTIONAL LAW ⬤�top318—DUE PROCESS OF LAW—PROCEEDINGS UNDER NEVADA WATER LAW.

The provisions of said act for notice and hearing, with the right to file exceptions to the determination of the engineer, even by those who fail or refuse to appear or submit evidence, are sufficient to constitute due process of law, and the act is otherwise constitutional.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 949.]

In Equity. Suit by W. C. Bergman, H. B. Alfree, and John G. Taylor, Incorporated, against W. M. Kearney, as State Engineer. On final hearing. Decree for defendant.

This is a suit brought by plaintiffs, for themselves and in behalf of other appropriators of water from the Humboldt river system, whose rights thereto were acquired prior to the approval of the present water law of Nevada. The purpose of the suit is to procure a permanent injunction, restraining defendant as state engineer of Nevada, from proceeding to hear or determine any of the rights or appropriations of plaintiffs, or of any other claimant in

⬤⟼For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and to the waters of Humboldt river and its tributaries, including the Little Humboldt, which were initiated and perfected prior to the passage of the Nevada Water Law, approved March 22, 1913. In detail, the court is asked to restrain defendant from hearing and determining, or from entering any order determining, such rights, from issuing to any one claiming waters of said stream a certificate of determination, from making any order requiring proofs of appropriation to be filed within any fixed time, and from refusing to receive and file proofs of appropriation from the Humboldt river, when such proof is offered during office hours of the engineer, and accompanied by the proper fees. Plaintiffs also pray for a judgment and a decree:

"(1) That defendant, as state engineer, has no right or authority to hear or determine any matter or thing relating to or concerning the rights or relative rights of plaintiffs, or of either of them, or of any other claimant to or appropriator of the waters of said Humboldt river and its tributaries, including the Little Humboldt, which rights or appropriations were completed prior to the approval of the act of March 22, 1913.

"(2) That each and all of the acts of defendant in proceeding to hear and determine such rights are in excess of any authority vested in him as state engineer.

"(3) That the state of Nevada, including the public or the people thereof, as a sovereign proprietor, never did, and does not now, own, possess, or have any right, title, claim, or interest in or to the water of all, or any, sources of water supply, or of all, or any, of the natural water courses, within the boundaries of the state, whether above or beneath the surface of the ground.

"That the state of Nevada has no right or authority, by legislation or otherwise, to create an administrative office, and vest such office with power to determine the facts or law establishing plaintiffs' vested rights, the right of possession to or the possession of the right to the use of water claimed by plaintiffs as a vested property right."

Defendant admits that as state engineer he has notified plaintiffs, and each of them, to make and file in his office sworn statements or proofs of their respective claims and appropriations; that he is hearing, and will continue to hear, testimony, to receive proofs, to make the orders and determinations, and to perform the other things required of him by the Water Act of 1913, as amended in 1915; but he denies that such a course will in any manner invade or impair the vested rights of plaintiffs or other appropriators on said river system, or that the law, in so far as it directs the doing of these things already performed by him, or now in contemplation, violates either the Constitution of the United States or the Constitution of Nevada.

In so far as it is necessary to an understanding of the issues involved, the act, in brief outline, is as follows:

"Section 1. The water of all sources of water supply within the boundaries of the state, whether above or beneath the surface of the ground, belongs to the public.

"Sec. 2. Subject to existing rights, all such water may be appropriated for beneficial use as provided in this act and not otherwise. * * *

"Sec. 84. Nothing in this act contained shall impair the vested right of any person to the use of water, nor shall the right of any person to take and use water be impaired or affected by any of the provisions of this act where appropriations have been initiated in accordance with law prior to the approval of this act."

Whenever a petition signed by one or more water users on any stream or stream system is presented to the state engineer, requesting a determination of relative rights of various claimants to the waters thereof, if on investigation the facts warrant it, the engineer shall enter an order granting the petition, and proceed to make a determination. In the absence of such a petition, it is the duty of the engineer to enter such an order of determination of any stream selected by him, commencing on the streams in the order of their importance for irrigation. Section 18.

As soon as practicable after the order, the engineer, for a period of four consecutive weeks, must publish a notice, setting forth the fact of the order, the pendency of the proceedings, the date when his examinations will commence, and requiring all claimants to make proof of their claims. Section 19.

Beginning at the time fixed in the notice, the engineer must investigate the flow of the stream, the diverting ditches, the lands irrigated, make surveys and prepare maps showing the course of the stream, the location of each ditch or canal, the area, outline and character of culture of each parcel of land upon which the water of the stream has been used, and gather such other data and information as may be essential to a proper determination of water rights in the stream. Sections 20 and 21.

On filing his measurements and maps, the engineer must give notice of the date when he will commence taking proofs, and, fix a date, not less than 60 days thereafter, prior to which the proofs must be filed. Service of this notice is required to be made by publication in one or more newspapers for a period of four consecutive weeks, and by registered mail or delivery to each claimant in person. With each notice by registered mail, a blank form must be inclosed, on which the claimant is required to present in writing all particulars necessary for the determination of his right. He must state the nature of the right or use on which his claim is based, a description of the works of diversion and distribution, the date of beginning and completing the construction of such works and of any enlargements, the dimensions of the ditches, the date when the water was first used for irrigation or for other beneficial purposes, and, if for irrigation, the amount of land reclaimed the first and subsequent years, with the dates of reclamation, the area and location of lands intended to be irrigated, the character of the soil, the kind of crops, and such other facts as will show the nature and extent of his right, and his compliance with the law. Sections 22 and 23.

This statement must be under oath. Section 24.

At the time fixed in the notice, the engineer is to commence taking proofs, and proceed therewith during the time fixed in the notice, after which no proofs shall be received or filed unless the time is extended therefor by the state engineer. If any claimant neglects or refuses to make proof of his claim within the time fixed, the state engineer shall determine the right of such claimant from such evidence as he may obtain, or may have on file in his office in the way of maps, plats, surveys, and transcripts, but exceptions to such determinations may be filed in court. Section 25.

Any person interested in the water of a stream, who has not been served, and has no actual knowledge of the pendency of the proceedings, may at any time within six months after the entry of the engineer's determination file a petition to intervene. Section 26.

As soon as practicable after expiration of the time for filing proofs, the engineer must assemble and certify an abstract of all proofs, and cause the same to be printed. He must also prepare a notice, fixing the time and place when and where evidence taken by or filed with him shall be open to inspection of all interested parties for a period of not less than ten days. A copy of this notice and abstract must be delivered by the engineer, or sent by registered mail, to each person who has appeared and filed proofs, at least thirty days prior to the first day of such period of inspection. Section 28.

If any person claiming an interest desires to object to any other claim, he may initiate a contest by filing in writing with the engineer a written statement under oath, setting forth the grounds of the proposed contest. The contestant may, if he prefers, accomplish the same purpose by filing later with the clerk of the court in which the adjudication will be made his exceptions to the engineer's determination. When a notice of contest has been filed with the engineer, it is his duty to fix a time and place for the hearing. Notice to all parties to the contest must be served and return made in the same manner as in civil actions in the district courts of the state, or it may be sent by registered mail, and the receipt of such notice constitutes valid and legal service. Witnesses who neglect or refuse to attend and testify may be compelled by the district court to do so. The evidence will be confined to the subjects enumerated in the notice of contest and the reply, and must be reported and transcribed in its entirety. Sections 29, 30, 35.

As soon as possible after the hearing of contests, the engineer must make and record in his office an order determining and establishing the several

rights to the waters of the stream, and at any time within 60 days thereafter he may, for good cause shown, reopen the proceedings and grant a rehearing. The order of determination must be printed, and a copy delivered or sent by registered mail to each person who has appeared in the proceeding, by intervening, contesting, or filing proof of his claim. Section 33.

As soon as practicable thereafter a certified copy of the determination of the engineer, together with the original evidence and a transcript of the testimony filed with or taken by him, must be filed with the clerk of the district court of the county in which further proceedings are to be had. It is then the duty of the engineer to procure a court order fixing the time for hearing. A copy of this order must be sent by registered mail to each party to whom a copy of the order of determination is required to be sent. The notice must also be published four consecutive weeks in some newspaper of general circulation published in each county in which such stream system, or any part thereof, is located. Proof of service and publication must be filed with the clerk of the court. Section 34, as amended by St. 1915, c. 253, § 4.

At least five days before the hearing in court any interested party, who is aggrieved or dissatisfied with the determination of the engineer, may file a notice of exception thereto, a copy of which must be served on, or transmitted by registered mail to, the engineer. At the hearing the engineer's determination, the statements of claims, and the exceptions shall constitute the only pleadings. If no exceptions are filed, the court must enter a decree affirming the order of determination. If exceptions have been filed, all parties in interest, who have done so, must appear in person or by counsel, and the court must hear them, and all proceedings "shall be, as near as may be, in accordance with the rules governing civil actions." Section 35, as amended by St. 1915, § 5.

"For further information on any subject in controversy the court may employ one or more qualified persons to investigate and report thereon under oath, subject to examination by any party in interest as to his competency to give expert testimony thereon. The court, may, if necessary, refer the case or any part thereof for such further evidence to be taken by the state engineer as it may direct, and may require a further determination by him, subject to the court's instructions. After the hearing, the court shall enter a decree affirming or modifying the order of the state engineer. Upon the hearing the court may assess and adjudge against any party such costs as it may deem just and equitable, or may assess the costs in proportion to the amount of water right allotted. Appeals from such decree may be taken to the supreme court by the state engineer or any party in interest, in the same manner and with the same effect as in civil cases." Section 36, as amended by St. 1915, § 6.

A copy of the decree must then be filed in the office of the state engineer, and thereafter, subject only to the provisions of the law relating to appeal, a stay of proceedings shall be in full force and effect. Section 37, as amended by St. 1915, § 7.

"From and after the filing of the order of determination, evidence, and transcript with the county clerk as aforesaid, and during the time the hearing of said order is pending in the district court, the division of water from the stream involved in such determination shall be made by the state engineer in accordance with said order of determination." Section 38, as amended by St. 1915, § 8.

The operation of the order of determination may be stayed in whole or in part, pending a decree by the court, by any party on filing a bond in the court where the proceedings are pending, in such an amount as the judge may fix; the condition of the bond being to pay all damages that may accrue by reason of the stay. Section 39, as amended by St. 1915, § 9.

"Upon the final determination of the relative rights in and to the waters of any stream system, it shall be the duty of the state engineer to issue to each person represented in such determination a certificate to be signed by such state engineer, and bearing the seal of his office, setting forth the name and post office address of the owner of the right, the date of priority, extent and purpose of such right; and if such water be for irrigation purposes, a

description of the land, by legal subdivisions when possible, to which said water is appurtenant. Such certificate shall be transmitted by the state engineer in person or by registered mail to the county recorder of the county in which said right is located, and it shall be the duty of the county recorder upon the receipt of a recording fee of one dollar, collected as hereinbefore provided, to record the same in a book especially prepared and kept for that purpose, and thereupon immediately transmit the certificate to the respective owners." Section 51.

"Any person feeling himself aggrieved by any order or decision of the state engineer, acting in person or through his assistants or the water commissioners, affecting his interests, when such order or decision relates to the administration of determined rights or is made pursuant to sections 52 to 88, inclusive, of this act, may have the same reviewed by a proceeding for that purpose, in so far as may be in the nature of an appeal, which shall be initiated in the proper court of the county in which the matters affected or a portion thereof are situated. The proceedings in every case shall be heard and tried by the court, and shall be informal and summary, but full opportunity to be heard shall•be had before judgment is pronounced. And no such proceeding shall be entertained unless notice thereof, containing a statement of the substance of the order or decision complained of, and of the manner in which the same injuriously affects the petitioner's interests, shall have been served upon the state engineer, personally or by registered mail, at his office at the State Capitol within thirty days following the rendition of the order or decision in question. A similar notice shall also be served personally or by registered mail upon the person or persons who may have been affected by such order or decision. Where evidence has been filed with, or testimony taken before, the state engineer, acting as aforesaid, a transcribed copy thereof, or of any specific part of the same, duly certified as a true and correct transcript in the manner provided by law, shall be received in evidence with the same effect as if the reporter were present and testified to the facts so certified. A copy of said transcript shall be furnished on demand, at actual cost, to any person affected by such order or decision, and to all other persons on payment of a reasonable amount therefor, to be fixed by the state engineer. No bond shall be required except a stay is desired, and the proceedings herein provided for shall not be a stay unless, within five days following the service of notice thereof, a bond shall be filed in an amount to be fixed by the court, with sureties satisfactory to such court, conditioned to perform the judgment rendered in such proceedings. Costs shall be paid as in civil cases brought in the district court, except by the state engineer or the state; and the practice in civil cases shall apply and be consistent with the informal and summary character of such proceedings, as herein provided. Appeals may be taken to the supreme court from the judgment of the district court in the same manner and with the same effect as in other civil cases, except that notice of appeal must be served and filed within sixty days from the entry of judgment. The decision of the state engineer shall be prima facie correct, and the burden of proof shall be upon the party attacking the same. Whenever it shall appear to the state engineer that any litigation, whether now pending or hereafter brought, may adversely affect the rights of the public in water, it shall be his duty to request the attorney general to appear and protect the interests of the state." Section 75.

"Any and all maps, plats, surveys, and evidence on file in the office of the state engineer relating to any proof of appropriation involved in the proceedings for the determination of the relative rights in and to the waters of any stream system, obtained or filed under the provisions of this or any preceding act relating to the office of state engineer, shall be admissible in court and shall have the same force and effect as though obtained and submitted under the provisions of this act as amended: Provided, that at least ninety days prior to the rendering of his order of determination of the relative rights in and to the waters of any stream system, the state engineer shall notify all parties in interest of his intention to consider such maps, plats, and evidence, and of his intention to submit his findings to the court under the provisions of this act as amended; such notice to be given in the manner pre-

scribed in section 22 of this act. Within sixty days after such notice, any such party in interest may file with the state engineer any additional or supplementary maps, plats, surveys, or evidence, or objections to the admissibility of any evidence hitherto presented and on file in the office of the state engineer, in relation to his claim of water right or adverse to the claim or claims of the water right of any other party or parties in interest, in order so to perfect his claim in accordance with the provisions of this amended act, and the state engineer shall consider the whole thereof in rendering such order of determination, and the same shall become a part of the record which shall be submitted to the court as provided by sections 34 to 39, inclusive, of this act." Section 88a, as amended by St. 1915, § 14.

Cheney, Downer, Price & Hawkins, of Reno, Nev., for plaintiffs.

Geo. B. Thatcher, Atty. Gen., of Nevada, and W. M. Kearney, State Engineer, of Carson City, Nev., for defendant.

Morrison, Dunne & Brobeck and Edward Hohfeld, all of San Francisco, Cal., and Hugh H. Brown and J. H. Evans, both of Tonopah, Nev., amici curiæ.

FARRINGTON, District Judge (after stating the facts as above). Plaintiffs take the position that they are possessed of certain property rights in the waters of Humboldt river, which were perfected prior to the passage of the Nevada Water Law of 1913, and prior to 1902, when the office of state engineer was created; that there never has been any general adjudication of the rights, or relative rights, of plaintiffs, or other appropriators, to the waters of that stream; consequently the proposed determination by defendant, being an exercise of something more than administrative authority, will impair plaintiffs' vested rights, and is therefore unconstitutional. The three main contentions are as follows:

First, that the statute itself, by virtue particularly of sections 2 and 84, does not contemplate or authorize the state engineer to make orders determining and establishing the several rights to the waters of a stream, when those rights were initiated and perfected prior to 1903, or prior to March 22, 1913, the date of the 1913 statute.

Second, that the legislative declaration contained in section 1 of said Water Law of 1913, which reads, "The water of all sources of water supply within the boundaries of the state, whether above or beneath the surface of the ground, belongs to the public," is insufficient to, and does not, warrant or authorize the acts done and threatened to be done by defendant, as state engineer, as alleged in the bill of complaint, because the waters of all sources of water supply within the boundaries of the state are appropriated or unappropriated; if appropriated, they belong to the appropriator thereof; if unappropriated, they belong to the United States government, by virtue of the treaty of the United States of America and the United Mexican States in 1848, and by virtue of the Enabling Act, approved March 21, 1864.

Third, that the statute, beginning with section 18, and concluding with section 58, both inclusive, and section 75, and sections 88a and 88b, is invalid, because thereby it is sought to confer upon a nonjudicial officer judicial powers, by the terms of the statute the district courts of the state are deprived of the original jurisdiction, vested in them by article 6, section 6, of the Nevada Constitution, and

that it makes of the district courts appellate courts, when the district courts have "no final appellate jurisdiction, except on appeal from justices' courts, and such other inferior tribunals as may be established by law," and that, where the district court has appellate jurisdiction, that is final, and no appeal lies from its decision to the Supreme Court of the state of Nevada.

[1] The first contention is without merit. Manifestly, the whole scope and purpose of the act is to provide, among other things, for controlling and regulating the use of water. In order that this design may be accomplished, it is necessary to provide a method of appropriation which will insure that each new right be located, identified, and described as accurately as possible. It is also necessary that all existing rights, whether they accrued before or after the creation of the office of state engineer, be ascertained. There can be no appropriation unless there is water to appropriate. There can be no just distribution of the waters flowing in a stream among those entitled thereto, until their respective rights and necessities are known. Appropriation or regulation, without such knowledge, or supervision, which does not extend to and include early vested rights, will be both useless and mischievous.

The act begins and ends with a disclaimer of any purpose to impair vested rights. This circumstance may be significant, but it does not signify that state determination and regulation of vested rights is inconsistent with their maintenance and preservation. If such rights, accruing prior to the passage of the act, were to be exempt from its operation, it is singular that purpose was not clearly expressed.

The demand for regulation is more and more insistent, as the people of the state come to understand how limited is the supply, how immeasurable the need for water, and how essential it is to the general welfare that every stream and every foot of water within our boundaries should perform its largest possible economic service. In addition to this are the manifold and inevitable embarrassments and difficulties which arise from the fact that practically all Nevada water rights are undefined, and therefore debatable. One who has located a mining claim or a homestead is able to prove up before the proper officials, and to obtain a patent defining accurately the tract of land to which he is entitled. In the earlier decisions, particularly those rendered after the doctrine of riparian ownership was declared to be unsuited to our conditions, in an endeavor to define conflicting rights with some degree of certainty, the courts occasionally awarded to each party in due order the use of a fixed and measurable portion of the stream in controversy. While this afforded a ready and usually satisfactory method of adjustment between the immediate litigants, it was wholly inconsistent with the principle that each appropriator's right to the use of water is limited within his appropriation to the amount, applied economically, which is necessary to accomplish the beneficial purpose for which the appropriation was made. For irrigation this amount varies with the varying humidity of each season.

In the case of Gotelli v. Cardelli, 26 Nev. 382, 69 Pac. 8, there was a decree awarding plaintiffs all the water their ditch would carry. This decree was held to be erroneous, and the trial court was ordered

to modify it, by eliminating all directions touching any fixed quantity or volume of water.

More than 700 persons and corporations claim rights to use water from the Humboldt river. For the most part these claims are uncertain and indefinite; the uncertainty of each affects and adds to the indefiniteness of every subsequent appropriation. When these claims are adjudicated, so they can be measured and identified with approximately the same precision which characterizes a deed conveying a parcel of land, much will be added to the value of the rights, and the temptation to turn surplus water into the sagebrush, in order to prevent others from acquiring adverse rights, will be removed.

It is within the legislative power to enact laws designed to remedy such general confusion and uncertainty as to titles, and, when the public interest demands it, to require a party, in actual possession and claiming perfect title, to appear before a properly constituted tribunal and establish title by a judicial proceeding. This was the method pursued in settling San Francisco titles after the records had been destroyed in the great fire of 1906, and also by the United States in determining, as between itself and claimants under Mexican grants, the title to property in California. American Land Co. v. Zeiss, 219 U. S. 47, 60, 31 Sup. Ct. 200, 55 L. Ed. 82.

That determination and control of all water rights, without regard to the date of acquisition, is contemplated and required by the Water Law, is too obvious to admit of discussion. The question is whether the scheme provided, in so far as it is alleged to prejudice the rights of these plaintiffs, is unconstitutional.

[2] Any extended discussion of plaintiffs' second contention would be largely academic, and could lead to no profitable or decisive conclusion. Section 1 of the act declares that the water of all sources of water supply within the boundaries of the state, whether above or beneath the surface of the ground, belongs to the public. Section 84 provides that nothing in the act "shall impair the vested right of any person to the use of water." In section 2 all such waters, "subject to existing rights," are declared to be open to appropriation.

For years the national government has consistently recognized and respected rights acquired by appropriation to the use of water. It has conformed to the state statutes regulating the acquisition of unappropriated waters; and when its proprietary interest in the use of running water has come in conflict with that of the individual, it has, like the individual, resorted to the courts for settlement and adjustment. In Act July 26, 1866, c. 262, § 9, the Congress of the United States declared:

"That whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested, and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same." 14 Stat. 253 (Comp. St. 1916, § 4647).

This was followed March 3, 1877, by an act to provide for the sale of desert lands in Nevada and other states, in which this language occurs:

"The right to the use of water by the person so conducting the same, on or to any tract of desert land of six hundred and forty acres shall depend upon bona fide prior appropriation; and such right shall not exceed the amount of water actually appropriated, and necessarily used for the purpose of irrigation and reclamation; and all surplus water over and above such actual appropriation and use, together with the water of all lakes, rivers and other sources of water supply upon the public lands and not navigable, shall remain and be held free for the appropriation and use of the public for irrigation, mining and manufacturing purposes subject to existing rights." 19 Stat. 377, c. 107 (Comp. St. 1916, § 4674).

Long prior to the act of 1866, the doctrine of appropriation was approved and recognized in all the Pacific Coast states. In Jones v. Adams, 19 Nev. 78, 6 Pac. 442, 3 Am. St. Rep. 788, Reno S. M. & R. Works v. Stevenson, 20 Nev. 269, 21 Pac. 317, 4 L. R. A. 60, 19 Am. St. Rep. 364, and Walsh v. Wallace, 26 Nev. 299, 67 Pac. 914, 99 Am. St. Rep. 692, it was announced that the doctrine of riparian rights has no place in the law of Nevada.

The statutory declaration that all waters within the state belong to the public can hardly be construed as a claim of title on the part of the state to such usufructuary rights as had already vested when the act was adopted. Both the state and national governments concede and have granted the privilege of acquiring rights to the use of water by appropriation, and it was by appropriation that the vested rights alleged in the present bill to be in danger of infringement were secured. The titles thus obtained are not those of the sovereign; they are no more than proprietary, and as such they are subject to the same sovereign authority and control which the state exercises over other privately owned real estate within its boundaries.

The idea that the individual has a vested right to enjoy the use of running water without public regulation or control is subversive of the sovereignty of the state. The state cannot divest itself of, or surrender, grant, or bargain away, this authority. Whenever the general public morals, health, safety, or welfare demand it, it becomes the duty of the state to exercise its police power of regulation and control, to the end that the individual may be restrained from exercising rights of ownership or possession to the substantial injury of others, or to the detriment of the community; and this restraint may be such as the Legislature in its wisdom deems reasonable and expedient.

Water is not capable of permanent private ownership; it is the use of water which the state permits the individual to appropriate. The water itself, so the statute declares, belongs to the public. The provision that the state may by law provide active, efficient regulation covering the distribution and use of water can no longer be challenged, either for want of power on the part of the state, or on the ground that such regulation is not essential to the peace and welfare of the public. Ormsby County v. Kearney, 37 Nev. 314, 336, 351–354, 142 Pac. 803; In re Willow Creek, 74 Or. 610, 617, 144 Pac. 505, 146 Pac. 475; Holden v. Hardy, 169 U. S. 366, 392, 18 Sup. Ct. 383, 42 L. Ed. 780; Hudson Water Co. v. McCarter, 209 U. S. 349, 355, 28 Sup. Ct. 529, 52 L. Ed. 828, 14 Ann. Cas. 560; Pacific Live Stock

Co. v. Oregon Water Board, 241 U. S. 440, 448, 36 Sup. Ct. 637, 60 L. Ed. 1084.

[3] Plaintiffs' third contention presents the most serious question we have to investigate. At the outset it is well to recur to the following well-established principles:

First. The presumptions are all in favor of the validity of a state statute, attacked on the ground that it conflicts with the state Constitution.

Second. If a state statute, as construed by the highest state court, conflicts with the federal Constitution, it is the duty of the federal courts to so declare.

Third. If the question involves merely the conformity of the act with the state Constitution, the decisions of the highest state court are final and conclusive. In such a case a federal court is reluctant to declare a state statute unconstitutional before the question has been considered and determined by the state tribunal. Michigan Central Railroad v. Powers, 201 U. S. 245, 291, 26 Sup. Ct. 459, 50 L. Ed. 744; American Land Co. v. Zeiss, 219 U. S. 48, 65, 31 Sup. Ct. 200, 55 L. Ed. 82; Fallbrook Irr. Dist. v. Bradley, 164 U. S. 112, 154, 17 Sup. Ct. 56, 41 L. Ed. 369; McGehee on Due Process of Law, 37.

[4] The court will hear only those objecting to the constitutionality of an act who are affected by its alleged unconstitutionality in the particulars complained of. In the recent case of Ormsby County v. Kearney, 37 Nev. 314, 142 Pac. 803, on appeal from the district court for Humboldt county, the Supreme Court of this state had under consideration the Water Law as enacted in 1913. The purpose of the action was to restrain the state engineer from proceeding under that statute, and the result was an order directing the district court to modify the temporary injunction, "so as to only restrain the state engineer from making determinations which would in any way impair vested rights"; but what acts of determination would impair vested water rights was not indicated, otherwise than as the court held that the act was unconstitutional in so far as it authorized the engineer to make decrees which were final and conclusive. The majority of the court were of the opinion that the state, in the exercise of its police power to prescribe laws for the general welfare, could provide for inspection and regulation of the waters and water courses of the state, and exercise a superintending control over them; that the Water Law of 1913, giving the state engineer the right to institute proceedings to determine water rights, if construed as administrative only, and not to impair vested rights, was valid; and that the state engineer could lawfully take evidence and determine water rights for administrative purposes.

In order to understand how and to what extent the court declared the law of 1913 unconstitutional, it will be necessary to examine the decision and the statute. Section 44 of the act of 1913 in terms declares that:

"The final orders or decrees of the state engineer, in the proceedings provided by law for the adjudication and determination of rights to the use of the waters in this state, shall be conclusive as to all prior appropriations, and the rights of all existing claimants upon the stream or other body of water

lawfully embraced in the adjudication, subject, however, to the provisions of law for appeals, rehearings and for the reopening of the orders or decrees therein."

If the proceedings were reopened, the rehearings could be had only before the state engineer. The only appeal granted was to the district court; but as that court, under the Constitution, had and could exercise no such appellate jurisdiction, the act had the effect of making the determination of an administrative officer a final adjudication of property rights, from which there could be no appeal. The court very properly held the act unconstitutional in this respect. Ormsby County v. Kearney, supra, 37 Nev. 356, 379, 384, 385, 142 Pac. 803.

In the act as amended, section 44 was repealed. Sections 40, 41, 42, and 43, relating to the practice, undertakings, and costs on appeal from the decrees of the district court made on appeal to that court from the final order of the state engineer, were also repealed. The last clause of section 33, giving the determination of the state engineer full force and effect from and after the date of its entry in the records of the state engineer, was omitted. In the amended act, the determination is permitted to have no efficiency until it is filed in the district court; thereafter the division of water must be made in accordance therewith, but this division "may be stayed in whole or in part by any party upon filing a bond in the court wherein such determination is pending." After the stay bond, the order of determination seems to be shorn of all efficiency, except that it operates as a pleading, and may be affirmed by the court, without trial, if no exceptions are filed.

The provisions imposing fines and imprisonment on those who fail to appear and make proof of their claims, and for postponing their priorities to the later priorities of claimants whose proofs are filed in accordance with the provisions of the act, do not appear in the statute as amended. For those whose default is willful or negligent, the only detriment prescribed is that their rights must be determined by the state engineer from such evidence as he may obtain or have in his possession; and those who have no actual knowledge or notice of the pendency of the proceedings may, at any time within six months after entry of the determination, file a petition in intervention.

Sections 34, 35, 36, 37, 38, and 39 of the original act allowed any party aggrieved by the order of determination six months within which to perfect an appeal to the district court. He was required to file an undertaking, conditioned to prosecute his appeal without unnecessary delay, and also to pay all costs and damages which might be suffered by the party to whom the undertaking was given. He was also required to file in the district court a certified copy of the order appealed from, and all testimony and records offered before the state engineer, including maps and measurements, together with a petition setting out his cause of complaint.

In the amended act the aggrieved party is only expected to file his exceptions. There is no appeal from the determination of the engineer to the district court, but rather a continuation in that court of proceedings commenced by and before the state engineer. When he has made his determination, he must file it, together with the original

evidence and transcripts, in the district court; he must then apply to the court to have the matter set for hearing; he must notify each interested party, and file proof of service. The order of determination, the statements or claims of claimants, and the exceptions to the order will constitute the only permissible pleadings, and all the proceedings thereunder are had as nearly as may be in accordance with the rules governing civil actions. If necessary, the court may employ experts to investigate and report, or it may refer the case, or any part of it, to the state engineer for further evidence or determination. The proceedings culminate in a decree affirming or modifying the determination. The only appeal involving the order of determination provided for in the amended act is from the decree of the district court to the Supreme Court. There is no provision in the act of 1915 which declares that the determination of the state engineer shall at any time be in force and effect, save that, pending proceedings in court, the water may be distributed in accordance therewith, unless such distribution is prevented by a stay bond.

The insistence that the proceedings provided in the statute as amended, are tantamount to an appeal to the district court, as authorized in the act of 1913, is not well founded. At no stage does the determination possess any of the characteristics of finality; it cannot be regarded as terminating between the parties litigation on the merits of the case. It contemplates and provides for further information and testimony in the district court, before a final decree can be entered. It operates, not as a judgment, but as a pleading, or the findings of a referee. True, it may be affirmed without additional testimony, if no exceptions are filed. This is equivalent to the taking of a decree pro confesso when the allegations of the bill are sufficient to support the decree asked. Simkins, Federal Equity Suit, p. 388. A similar proceeding occurs when judgment by default is taken against a defendant who fails to answer in an action upon contract for the recovery of money or damages only. Rev. Laws Nev. § 5236.

It is insisted that the amendments of 1915 have failed to accomplish their purpose, and that the act as amended is still bad, in that it vests judicial power in a nonjudicial officer. It must be admitted that the amended act imposes duties on the state engineer which in their nature are judicial, but whether they come within the constitutional inhibition is the question.

Section 1, art. 3, of the Nevada Constitution, reads thus:

. "The powers of the government of the state of Nevada shall be divided into three separate departments—the legislative, the executive and the judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted."

Section 1, art 6, is as follows:

"The judicial power of this state shall be vested in a Supreme Court, district courts, and in justices of the peace. The Legislature may also establish courts, for municipal purposes only, in incorporated cities and towns."

It is argued that the judicial power of the state is thus completely distributed to the courts mentioned, and consequently the Legislature is

powerless to create new courts, except for municipal purposes in incorporated cities and towns, and has no reserve of judicial power to confer on an executive officer.

It will be noted that a complete and perfect separation of powers is not made by the Constitution itself. The veto power gives the Governor a qualified negative on all laws proposed by the Legislature. The Lieutenant Governor presides over the Senate, and has a casting vote. Each house of the Legislature is the judge of the qualifications, election, and returns of its own members; and the Senate is a high court for the trial of impeachments. Thus the Governor and Lieutenant Governor exercise legislative power, and the Legislature exercises judicial power.

Again, it is only those functions appertaining either to the judicial or legislative departments, which an executive officer is prohibited from exercising. Apparently it is not the exercise of all judicial authority, but the exercise of that portion of the judicial authority pertaining or belonging to the judicial department, which is forbidden. Apt and appropriate language certainly could have been employed to express complete and absolute segregation, if such had been the design of the men who framed and adopted the Constitution. It was this thought which led our Supreme Court to say in Sawyer v. Dooley, 21 Nev. 390, 396, 32 Pac. 437, 439:

"It is the state government as created by the Constitution which is divided into departments. These departments are each charged by other parts of the Constitution with certain duties and functions, and it is to these that the prohibition just quoted refers. * * * It would be impossible to administer the state government, were the officers not permitted and required, in many instances, to discharge duties in their nature judicial."

Hence it was held that executive officers might be charged with the duty of assessing property, and required to act as a board of equalization; for, notwithstanding the fact that such a board may act in a judicial capacity, the Constitution nowhere contemplates that the judicial department, as organized by article 6, shall discharge that duty.

It is impossible to say that all acts judicial in their nature are within the exclusive province of the judicial department of the government. Numerous instances may be cited in which nonjudicial officers have been required to exercise functions which in a sense are judicial, and yet statutes imposing such duties have been held to be constitutional. For instance, we have a railroad commission, an industrial commission, a public service commission, a tax commission, boards of equalization, and boards of county commissioners. Not one of these bodies is a court, and yet under certain circumstances each is authorized to require the presence of witnesses, to listen to evidence, to hear argument, to ascertain facts, to apply existing law thereto, and to enter decisions seriously affecting the rights of individuals. Such judicial power exercised by nonjudicial officers is termed quasi judicial, to distinguish it from the judicial power which devolves upon, and may be exercised only by, the courts.

The ultimate purpose for which the adversary proceedings are had is a most important factor in determining their character. At the close

241 F.—57

of the chapter on Separation of Powers, section 753, in his work on the Constitution, Willoughby says:

"There is no constitutional objection to vesting the performance of acts essentially judicial in character in the hands of the executive or administrative agents, provided the performance of these functions is properly incidental to the execution by the department in question of functions peculiarly its own."

In Landowners v. People, 113 Ill. 296, 309, it is said:

"Judicial power has never been held to apply to those cases where judgment is exercised as incident to the execution of a ministerial power, nor has it ever been held the exercise of ministerial power by the courts, within the meaning of this article, where they have been compelled to exercise a ministerial act as an incident to the exercise of judicial power."

If a judicial hearing is had before a legislative body to ascertain facts upon which to base legislation, the hearing will be quasi judicial, even though it may have been conducted in strict accordance with the practice in civil cases; it is merely preliminary and incidental to the legislative act. It is in no sense a function properly appertaining to the judicial department of the state government.

Again, an aggrieved shipper lodges with the Railroad Commission a complaint, alleging that certain charges are extortionate, unjust, and discriminatory; interested parties are notified; they appear; witnesses are summoned, examined, and cross-examined; there are arguments by the adverse parties; but the Commission—and this is significant— must determine that the allegations are true, that the prevailing rates are extortionate, unjust, or discriminatory, before it may by order establish and fix, in lieu thereof, rates which shall thereafter prevail. In all this there is no encroaching on the judicial power. The authority to determine what is a reasonable rate to be charged by a common carrier, or a public utility, is legislative, and not judicial, in the constitutional sense. The Constitution nowhere imposes on the courts the duty of making such investigations and determinations preparatory to and in aid of legislative acts. Hence they cannot be regarded as functions appertaining to the judicial department. Southern Pacific Co. v. Bartine (C. C.) 170 Fed. 725, 773; Idaho Power, etc., Co., v. Blomquist, 26 Idaho, 222, 141 Pac. 1083, Ann. Cas. 1916E, 282.

Similarly, the Industrial Commission has been invested with authority, and charged with the duty of hearing evidence and determining the facts which must be found to exist before any claim for compensation of injured workmen may be allowed. It is held that such a commission is not a court, but an administrative body, which in the course of its duties may decide questions of law and fact. In so doing, it acts quasi judicially, but is not vested with judicial power in the constitutional sense. Borgnis v. Falk Co., 147 Wis. 327, 358, 133 N. W. 209, 37 L. R. A. (N. S.) 489.

Judicial power, in the constitutional sense, is something more than authority to hear and determine; it includes the power to decide finally and conclusively, and also power to carry its determination into effect. Judicial power is defined by Mr. Justice Miller as the—

"power of a court to decide and pronounce a judgment and carry it into effect between persons who bring a case before it for decision."

See Western Metal Supply Co. v. Pillsbury, 172 Cal. 407, 412, 156 Pac. 491, 493; Muskrat v. United States, 219 U. S. 346, 356, 31 Sup. Ct. 250, 55 L. Ed. 246; District of Columbia v. Eslin, 183 U. S. 62, 65, 22 Sup. Ct. 17, 46 L. Ed. 85; Gordon v. United States, 117 U. S. 697; Interstate Commerce Com. v. Brimson, 154 U. S. 447, 481, 14 Sup. Ct. 1125, 38 L. Ed. 1047.

In Underwood v. McDuffee, 15 Mich. 361, 368, 93 Am. Dec. 194, 196, the court said:

"No action which is merely preparatory to an order or judgment to be rendered by some different body can be properly termed judicial. A master in chancery often has occasion to consider questions of law and of fact, but no one ever supposed him to possess judicial power. A jury in a court of record determines all the facts in a case, but the judicial power is in the court which enforces the verdict by judgment. This view is very clearly explained by Kent, C. J., in Tillotson v. Cheetham, 2 Johns. [N. Y.] 63 (3 Am. Dec. 459), where it was held that the sheriff himself, when presiding over a jury of inquest, acted ministerially, because he had no power to give judgment. * * * It is the inherent authority, not only to decide, but to make binding orders or judgments, which constitutes judicial power; and the instrumentalities used to inform the tribunal, whether left to its own choice or fixed by law, are merely auxiliary to that power, and operate on persons or things only through its action, and by virtue of it."

In McKnight v. Grant, 13 Idaho, 629, 637, 92 Pac. 989, 990, 121 Am. St. Rep. 287, 290, the Supreme Court of Idaho says:

"On the other hand, section 13 of article 5 of the Constitution was never intended to prohibit other departments of the state government than the judicial from exercising some judicial or quasi judicial functions. We think by this provision it was rather intended to preserve to the judicial department of the state government the right and power to finally determine controversies between parties involving their rights and upon whose claims some decision or judgment must be rendered or determination made."

It was held, in People ex rel. Morgan v. Hayne, 83 Cal. 111, 23 Pac. 1, 7 L. R. A. 348, 17 Am. St. Rep. 211, that the Supreme Court Commissioners of that state in reporting facts and conclusions of law, are not exercising judicial power.

In 1792 Congress passed an act requiring the Circuit Courts of the United States to examine into the pension claims of disabled veterans of the Revolutionary War, to determine what amount of pay would be equivalent to the disability incurred, and to certify the same to the Secretary of War, who was to place the names on the pension list in conformity thereto, unless he had cause to suspect imposition or mistake, in which event he might withhold the pension and report the case to Congress. The judges were of the opinion that, inasmuch as their determination would not be final, but could be suspended by an executive officer, the duties imposed could not be deemed judicial. Hayburn's Case, 2 Dall. (Pa.) 409, 1 L. Ed. 436.

In United States v. Ferreira, 13 How. 40, 14 L. Ed. 42, the District Judge of Florida was authorized by an Act of Congress to receive and adjudicate certain claims against the United States. His decisions allowing claims, together with the evidence on which he acted, were to be transmitted to the Secretary of War, and, if he was satisfied that the same were legal and just, he was authorized to pay them. The Supreme Court declared:

"The powers conferred by these acts of Congress upon the judge, as well as the Secretary, are, it is true, judicial in their nature. For judgment and discretion must be exercised by both of them. But it is nothing more than the power ordinarily given by law to a commissioner appointed to adjust claims to lands or money under a treaty, or special powers to inquire into or decide any other particular class of controversies in which the public or individuals may be concerned. A power of this description may constitutionally be conferred on a Secretary as well as on a commissioner, but is not judicial in either case, in the sense in which judicial power is granted by the Constitution to the courts of the United States."

In framing the amendments of 1915, the Legislature attempted, and I think successfully, to provide a mode for transferring proceedings and records from the state engineer's office to the district court, which need not be regarded or treated as an appeal. Even if it were possible to view the transfer as an appeal, and therefore not permissible under our Constitution, we are not at liberty to do so if the transaction is reasonably susceptible of a different construction and interpretation in harmony with the organic law of the state.

A similar problem was presented to the court in United States v. Ritchie, 17 How. 525, 15 L. Ed. 236. Congress had passed an act "to ascertain and settle private land claims in the state of California." Act March 3, 1851, c. 41, 9 Stat. 631. As this statute has been the model for much state legislation regulating water rights in the arid states, it will not be unprofitable to outline briefly its salient features. It authorized the President to appoint a board, consisting of three commissioners, each of whom was to serve for a limited period. Before this board all persons claiming land under grants from the Mexican or Spanish government were required to present their title, with their witnesses and evidence. It was the duty of the board to hear and examine the testimony, both of the claimants and of the United States, and, after deciding upon the validity of the claim, to prepare two certified transcripts of their proceedings and decision, and of the papers and evidence on which the decision was founded. They were required to file one with the clerk of the proper United States District Court, and the other with the Attorney General of the United States. It was further provided that the filing of such transcript in the District Court should ipso facto operate as an appeal for the party against whom the decision had been rendered, but if such losing party failed for six months thereafter to file with the clerk of the court a notice of his intention to prosecute the appeal, the appeal should be regarded as dismissed. It was the duty of the District Court, after considering the pleadings and the evidence on which the commission had acted, and such further evidence as it might order to be taken, to render judgment. It was further enacted:

"That * * * all lands, the claims to which shall not have been presented to the said commissioners within two years after the date of this act shall be deemed, held, and considered as part of the public domain of the United States," and that "the final decrees rendered by the said commissioners * * * shall be conclusive between the United States and the said claimants." 9 Stat. 633, §§ 13, 15.

The claim of the plaintiff Ritchie to a large tract of land north of San Francisco Bay was presented to the board; there was a decision

in his favor, which was subsequently affirmed in the United States District Court. On appeal to the Supreme Court of the United States, it was objected that the law was unconstitutional, because the board of commissioners was not a court, and therefore could not be vested with judicial power, or render a judgment from which an appeal could be taken to the district court. Mr. Justice Nelson, speaking for the Supreme Court, said:

"The suit in the District Court is to be regarded as an original proceeding: the removal of the transcript, papers, and evidence into it from the board of commissioners being but a mode of providing for the institution of the suit in that court. The transfer, it is true, is called an appeal; we must not, however, be misled by a name, but look to the substance and intent of the proceeding. The District Court is not confined to a mere re-examination of the case as heard and decided by the board of commissioners, but bears the case de novo, upon the papers and testimony which had been used before the board, they being made evidence in the District Court, and also upon such further evidence as either party may see fit to produce." 17 How. 533, 15 L. Ed. 236.

It is said that the decisions of Wyoming, Nebraska, and Oregon can have but little weight in the solution of the problem which confronts this court. The reason urged in support of this proposition is that, under the Constitutions and statutes of those states, the adjudication of water rights is made by officers or boards competent to exercise the judicial power, and it may be reviewed by courts having appellate jurisdiction to do so, whereas in Nevada the state engineer cannot be vested with judicial power, or the district court with such appellate jurisdiction.

In my judgment the assumptions on which this proposition rests cannot be indulged. If it is permissible by statute under the Constitutions of Wyoming, Nebraska, and Oregon to clothe an administrative board or official with judicial power, why have the courts in those states with such unanimity overlooked this solution of the constitutional questions involved in the consideration of their water laws, and rested on the theory that the powers conferred on such boards are not judicial, but quasi judicial? The Constitution of Wyoming declares that the waters of all natural streams, springs, and bodies of water are the property of the state. It also provides for a board of control and a state engineer as follows:

"There shall be constituted a board of control, to be composed of the state engineer and superintendents of the water divisions; which shall, under such regulations as may be prescribed by law, have the supervision of the waters of the state and of their appropriation, distribution and diversion, and of the various officers connected therewith. Its decisions to be subject to review by the courts of the state." Article 8, § 2.

"There shall be a state engineer. * * * He shall be president of the board of control, and shall have general supervision of the waters of the state and of the officers connected with its distribution." Article 8, § 5.

Elsewhere the Wyoming Constitution also provides:

"The judicial power of the state shall be vested in the Senate, sitting as a court of impeachment, in a Supreme Court, district courts, justices of the peace, courts of arbitration and such courts as the Legislature may, by general law, establish for incorporated cities or incorporated towns." Article 5, § 1.

In Wyoming the judicial power of the state is thus distributed to six courts, among which the board of control is not mentioned. Had it been the intention to vest that board with judicial power, it certainly would have been included among the courts mentioned in the Constitution. Instead, the power given to the board over the waters of the state, and over their appropriation, distribution, and diversion, is supervisory. Supervisory power and judicial power are not the same. One is the power of a superintendent, and the other the power of a court.

The Wyoming Water Law (Laws 1890–91, c. 8) is entitled "An act providing for the supervision and use of the waters of the state." It provides for the selection, by the board of control, of the stream to be adjudicated, notice of proceedings, sworn statements by claimants, measurements, examinations, and maps of streams, ditches, and irrigated lands, to be made by the state engineer, testimony, to be taken by a member of the board, opening of all evidence to inspection, contests, hearings, and an order of the board determining and establishing the several priorities, the amount of water appropriated, the character and kind of use for which each appropriation was made, and certificates of appropriation. It also provides that parties aggrieved may appeal from the board of control to the district court. The appellant is obliged to file a bond on appeal, and to file in the court a certified copy of the order appealed from, and of all records, measurements, and evidence considered by the board, and if he desires to stay operation of the order appealed from he is obliged to file an additional bond. The matter is tried de novo in court.

In Farm Investment Co. v. Carpenter, 9 Wyo. 110, 61 Pac. 258, 50 L. R. A. 747, 87 Am. St. Rep. 918, the constitutionality of the act was attacked, on the ground that the title was not broad enough to include the provisions for adjudicating water rights, and also on the ground that the statute attempted to confer judicial power on the board of control, in violation of the Constitution, which vests the judicial power in certain specified courts. It was held that the regulation of the use of water for irrigation was the controlling purpose of the act; that it contemplated a supervision of the diversion and distribution of water to private appropriators; that such supervision predicated official action, administrative rather than judicial in its fundamental character. The court argued that any attempt to supervise and regulate the distribution of water, in the absence of an effective ascertainment of the rights of the various claimants, must, of necessity, result in a practical failure; that the requisite investigation in the first instance could be made with greater facility, with less expense, and with a larger degree of satisfaction to all concerned, by an administrative board than by a court; that the board is not required to await controversies, but is to proceed on its own motion; the claimant does not obtain redress for injury, but secures evidence of his right to use water; this evidence comes from an executive board representing the state, and charged with the duty of conserving public, as well as private, interests, and of seeing that the water is properly distributed. The court finally concluded thus:

"The determination required to be made by the board is, in our opinion, primarily administrative rather than judicial in character. * * * The board, it is true, acts judicially; but the power exercised is quasi judicial only, and such as, under proper circumstances, may appropriately be conferred upon executive officers or boards. The jurisdiction bears some resemblance to that of the land department of the government concerning the disposal of the public lands. That department is not regarded as a court, or as a branch of the judicial department; nor is its jurisdiction upheld upon the basis of any authority residing in congress to establish courts. It is considered as an administrative department, and its powers are held to be quasi judicial only. Orchard v. Alexander, 157 U. S. 372 [15 Sup. Ct. 635, 39 L. Ed. 737]."

Following the decision in the Carpenter Case, the courts of Wyoming have consistently and logically held that the board of control is not vested with, and does not exercise judicial power. In Willey v. Decker, 11 Wyo. 496, 548, 73 Pac. 210, 227 (100 Am. St. Rep. 939), it is said:

"Proceedings before the board of control are purely statutory, and an appeal to the district court from a decision of the board is merely a continuation of those proceedings in an appellate tribunal."

The Constitution of Wyoming, in marked contrast to that of Nevada, confers on the courts of that state, power to review orders of adjudication (article 8, § 2), and upon the district courts original jurisdiction—

"in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court * * * [and] such appellate jurisdiction in cases arising in justices' and other inferior courts * * * as may be prescribed by law." Article 5, § 10.

Hence decisions based on the Wyoming law and Constitution were not applicable to those sections of the Nevada Water Law of 1913, in which it was attempted to provide an appeal from the state engineer's decision to the district court, as the district court under the organic law of Nevada could exercise no such appellate jurisdiction, and as no other tribunal was named or authorized to consider, review, modify, or confirm the engineer's determination, there was no escape from the conclusion that the Legislature had thus attempted to confer on the state engineer the power to make an order possessing every element of finality and conclusiveness which characterizes the judgments and decrees of a court, and to this it added the power to execute the order.

The authority to make and execute such an order is the very definition of judicial power. The significant feature of the Carpenter Case is the refusal to regard the board of control as a court, or to rest on the proposition that the board of control is vested with judicial power. Though the contrary course was strenuously urged by those attacking the law, the Supreme Court of Wyoming concluded that the adjudication required, though judicial in its nature, was incidental and preliminary to the larger and paramount purpose of the act, to wit, the supervision and regulation of the waters of the state, and of their appropriation, distribution and diversion, and consequently it was no more than an exercise of a quasi judicial authority, which in no wise violated the Constitution of Wyoming.

The Constitution of Nebraska contains nothing on the subject of irrigation; it distributes all the judicial power of the state to a Su-

preme Court, district courts, county courts, justices of the peace, police magistrates, and to such other courts, inferior to the district courts, as may be created by law for cities and incorporated towns. Article 6, § 1. The district court has both chancery and common-law jurisdiction, and such other jurisdiction as the Legislature may provide. Article 6, § 9. The powers of the government of the state are—

"divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." Article 2, § 1.

Thus in Nebraska the Legislature may confer appellate jurisdiction on the district courts, and may provide for an appeal to those courts from the determination of the board of irrigation, but on that board it cannot confer judicial power. By statute a board of irrigation has been created, which is required to adjudicate water rights. The mode of procedure is provided in a set of rules promulgated by the board itself, and is similar to that adopted by statute in Wyoming. Each certificate must set out, among other things, the priority of the appropriator, the amount of water which he has beneficially used, if for irrigation, a description of the land to which the water has been applied, and the amount thereof. From the order of determination there is an appeal to the district court, where the matter is tried de novo; each party is at liberty to offer such testimony as he may desire. The order of determination, in the absence of an appeal, is conclusive. Following Farm Investment Co. v. Carpenter, 9 Wyo. 110, 61 Pac. 258, 50 L. R. A. 747, 87 Am. St. Rep. 918, the courts of Nebraska have uniformly upheld the constitutionality of the act creating the board, and conferring on it the right to determine priorities to the use of water. Enterprise Irr. Dist. v. Tri-State Land Co., 92 Neb. 121, 138 N. W. 171, 178; Crawford Co. v. Hathaway, 67 Neb. 325, 93 N. W. 781, 60 L. R. A. 889, 108 Am. St. Rep. 647; Farmers' Canal Co. v. Frank, 72 Neb. 136, 151, 100 N. W. 286. In Crawford Co. v. Hathaway, 67 Neb. 325, 367, 93 N. W. 781, 795 (60 L. R. A. 889, 108 Am. St. Rep. 647), it is said:

"Powers of the same general nature and character are conferred upon almost every administrative body known to the statute, and regarding which it has frequently been decided are of a quasi judicial nature, and yet such bodies are invariably held to be administrative, and to in no way conflict with the constitutional provisions regarding officers and bodies upon whom judicial power may be conferred."

There are important differences between the Constitutions of Nevada and Oregon. In Nevada the judicial power of the state is vested exclusively "in a Supreme Court, district courts, and in justices of the peace," and also in such courts as the Legislature may establish, "for municipal purposes only, in incorporated cities and towns." Article 6, § 1. In Oregon the judicial power of the state is "vested in one Supreme Court and in such other courts as may from time to time be created by law." Article 7, § 1, as amended in 1910; Gen. Laws 1911, p. 7.

In Nevada the district court has no appellate jurisdiction over the state engineer's office. In Oregon the circuit court has "appellate ju-

risdiction and supervisory control over the county courts, and all other inferior courts, officers and tribunals." It also has all judicial power, authority, and jurisdiction not vested exclusively in some other court. Article 7, § 9. Clearly, the Nevada Legislature cannot confer judicial power on any court not mentioned in the Constitution itself. The Oregon Legislature seems to be endowed with such authority. This, however, is only true when the tribunal or official so selected is not charged with official duties under the executive or legislative departments.

Section 1, article 3, of the Oregon Constitution, reads thus:

"The powers of the government shall be divided into three separate departments—the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this constitution expressly provided."

The state engineer and the division superintendents in Oregon, neither singly nor collectively, constitute a court. Nowhere in the Constitution is it expressly provided that they may exercise judicial power, individually or as a body. They are administrative officers, charged by law with the performance of official duties under the executive department. This is so obvious that it has probably never occurred to any one to dispute it; and as such administrative officials they are no more competent, constitutionally, to exercise judicial power, than is the state engineer of Nevada. Evanhoff v. State Industrial Com., 78 Or. 503, 154 Pac. 106, 110.

If these deductions are correct, the vesting of judicial power in the Oregon board of control, or in the Nevada state engineer, are equally fatal. The courts of Oregon have uniformly and consistently held that the water law of that state does not confer judicial power on the board of control. They have never suggested, so far as I have been able to discover, "that under the state Constitution the board was vested with judicial power to try and decide the existing rights to water." On the contrary, they have rested squarely on the proposition that the adjudication of water rights required of the board is not judicial power in the constitutional sense, and that it is no more than a quasi judicial duty, which may be imposed on an administrative officer. In re Willow Creek, 74 Or. 592, 610, 612, 614, 144 Pac. 505, 146 Pac. 475; Pacific Live Stock Co. v. Lewis (D. C.) 217 Fed. 95, 98; Pacific Live Stock Co. v. Lewis, 241 U. S. 440, 36 Sup. Ct. 637, 60 L. Ed. 1084; In re Silvies River (D. C.) 199 Fed. 495; Oregon Lumber Co. v. East Fork Irr. Co., 80 Or. 568, 157 Pac. 963; Pacific Livestock Co. v. Cochran, 73 Or. 417, 429, 144 Pac. 668.

Under our law, with even more reason than under that of Oregon, Wyoming, or Nebraska, may it be said that the proceeding for the adjudication of water rights is integral; it is one; its preparatory and initial stages are before the state engineer; the final steps are in the district court. It is initiated by an order of the state engineer, without waiting for controversies to arise. He seeks no legal or equitable relief, either for himself or for the state which he represents. No recovery of the whole or any part of the rights to be investigated is demanded. He sets up no title to be established or quieted in him-

self or in the state; he alleges no rights which have been infringed or violated. The purpose of the proceeding is to promote the public welfare by regulating the use and preventing the waste of the waters of the state. His determination, though obtained judicially, has none of the elements of finality and conclusiveness which are the sine qua non of judicial power. As an ascertainment of relative rights, it is not effective for the administrative purpose of regulating and controlling distribution and diversion, until it is filed in court. Thereafter, pending the decree, the distribution must be had in accordance with the determination; but this may be prevented in whole or in part by any one who files in the court a stay bond, the amount of which is discretionary with the judge. The proceedings reach the court as a matter of course. No aggrieved claimant, nor all the claimants acting in unison, have any option in this regard. It is as much the duty of the engineer to file his determination with the original evidence, and a certified copy of all testimony on which it was based, in the court, as it was to make investigations, measurements, and maps, to gather evidence, or to prepare his determination. Until it is so filed, it has no more force than the findings of a referee. It is not a decree or judgment, in the sense that it terminates the litigation on the merits between parties; therefore there is nothing to appeal from. When it reaches the court, there is no necessity for an appeal; there its principal function is to serve as one of the pleadings. If no exceptions are filed, the court is justified in assuming that it reasonably satisfies all parties, and a decree will be entered affirming the order of determination. If any exceptions are filed, there must be a trial in the district court. At the hearing the court is not confined to a mere re-examination of the record and evidence as heard by the engineer, but will in all its proceedings follow as near as may be the rules governing civil actions. It may require further evidence or determination from the state engineer, or a report from such experts as it may employ to make investigations.

[5] I am therefore of the opinion that the act of 1913, as amended in 1915, in so far as it authorizes the state engineer to take evidence and determine water rights for administrative purposes, is not unconstitutional. The power exercised in the ascertainment of water rights for administrative purposes only is not judicial power in the constitutional sense; nor, in so far as the engineer is authorized to take evidence and determine water rights for the final adjudication of the titles of various claimants among themselves, is he vested with judicial power. What he does is merely preliminary, the initial step in a proceeding which culminates in a final decree by the district court; thus it is not the engineer, but the court, which exercises the judicial power of the state of Nevada.

[6] It is seriously contended that a water owner under the Nevada statute can be deprived of his rights without having had notice of any kind; consequently the act is unconstitutional. We are not at liberty to force a construction on a statute in order to declare it unconstitutional. The provisions of the statute bearing on this contention are as follows:

"Sec. 25. Upon neglect or refusal of any person to make proof of his claim * * * as required by this act, * * * the state engineer shall determine the right of such person from such evidence as he may obtain or may have on file. * * *" As amended by St. 1915, § 1.

Exceptions may be filed in court to such a determination.

"Sec. 26. Any person interested in the water of any stream upon whom no service of notice shall have been had * * * and who shall have no actual knowledge or notice of the pendency of said proceedings, may at any time prior to the expiration of six months after the entry of the determinations of the state engineer, file a petition to intervene in said proceedings. * * * Upon the filing of said petition in intervention granted by the state engineer, the petitioner shall be allowed to intervene upon such terms as may be equitable, and thereafter shall have all rights vouchsafed by this act to claimants who have been duly served."

"Sec. 35. At least five days prior to the day set for hearing all parties in interest who are aggrieved or dissatisfied with the order of determination * * * shall file with the clerk of said court notice of exceptions." As amended by St. 1915, § 5.

The statute requires the state engineer to determine the rights of those who do appear, and also the rights of those who negligently fail or refuse to present their claims, and for others, without notice or knowledge, it provides an opportunity to intervene. "Neglect or refusal" can be attributed to those only who have had notice or knowledge. If interested parties may with impunity, neglect or refuse to appear before the state engineer, the whole proceeding, though constitutional, may be blocked by claimants who are opposed to the state engineer, or to any settlement or regulation of water rights. Such a defaulter, however, is treated with far less severity in the Water Law than in our civil practice. Under the Water Law he may prevent the enforcement of the order by filing a bond in court. He may file his exceptions to the order of determination. If he appears at the hearing, the court will listen to him, consider the evidence, and, notwithstanding his previous neglect or refusal, undoubtedly will exercise its ample powers to order the production of all matters requisite to the doing of complete justice.

In every way consistent with the workableness of the statute, the Legislature has sought to protect the rights of those who fail to appear because they have had no actual notice or knowledge of the proceeding. They are allowed six months for intervention after the entry of the engineer's order of determination; a longer period would cause unreasonable delay. True, the engineer may not receive the petition of such a person, but in that event the petitioner may, at any time prior to five days before the day set for hearing in court, file his exceptions therein to the order of determination; it then becomes the duty of the court to hear him. Furthermore the court is clothed with full power to require the production of all necessary evidence, and even to require a determination of such a claim from the state engineer.

In the absence of any express language to that effect in the statute itself, and in the face of section 84, in which it is declared that:

"Nothing in this act contained shall impair the vested right of any person to the use of water, nor shall the right of any person to take and use water be

impaired or affected by any of the provisions of this act where appropriations have been initiated in accordance with law prior to the approval of this act"

—I am at a loss to understand how the statute can be effectively construed as authorizing the state engineer to deprive any appropriator of his vested water rights, without a hearing and without opportunity to be heard. It is an established maxim of the law that no one can be bound until he has had his day in court.

Few things are absolutely impossible. It is possible that a water user on the Humboldt river may not receive any notice through the mails. It is possible that he may not hear of, see, or read any notice in the newspapers, and after the determination of the engineer is lodged with the clerk, pending the decree of the court, while the water of the river is being divided and distributed in accordance with the order of determination, it is possible he may never become aware of the fact that he is being deprived of his water, and that no water is being divided or distributed to him; or it is possible that a stay bond may be filed in his behalf by a neighbor without his knowledge. All this is possible, but so extremely improbable that the consideration of such a case may well be deferred until it is actually before the court. It is not alleged that either or any of the complainants in the present proceedings will neglect or refuse to appear before the state engineer, or to file exceptions to his order of determination, if it be made.

The best reply to the objection that the notices provided for in the statute do not constitute due process of law is the statute itself. A brief outline of its provisions in relation to notice and hearing, with a similar outline of the corresponding provisions of the Oregon law, which have been approved, not only by the courts of that state, but also by the Supreme Court of the United States, will not be amiss.

The first notice of the pendency of proceedings, of the date when the engineer will begin his investigation, and of the time and place when the taking of testimony will commence, is given in Oregon by publication in two issues of a paper of general circulation, and by registered mail. The last publication, and the mailing of the notice, must be at least 30 days prior to the examination. In Nevada, notice of pendency of the engineer's investigation, and that all claimants are required to make proof, is by publication for 4 successive weeks. When the engineer has completed and filed his measurements, surveys, and maps, he must then publish in a newspaper for 4 consecutive weeks the date when he will commence taking proof, and a date, not less than 60 days thereafter, prior to which proofs must be filed. The last publication must not be less than 15 days before the date fixed for the commencement of taking testimony. This notice must be sent by registered mail to, or served personally by, the state engineer on each person who claims rights in the waters of the stream, in so far as such claimants can be reasonably ascertained. This notice must be mailed at least 30 days in advance of the date of hearing.

In Oregon, upon the completion of the testimony, 10 days' notice is given by registered mail to the various claimants of the time and place when all evidence shall be open to inspection; the opportunity

for inspection must not be less than 10 days. The notice must also state the county in which the determination of the board of control will be heard by the circuit court. In Nevada, 30 days' notice must be given of the time and place when and where the evidence will be open to inspection for a period of at least 10 days. This notice, with a printed abstract of the proof taken by the engineer must be sent by registered mail, or delivered in person, to each person who has filed his claim.

In both states, notices of contest must be served on the parties to the contest not less than 30, nor more than 60, days before the hearing. In Oregon, the service must be in the same manner that summons is served in civil cases. In Nevada, it must be served personally or by registered mail; a receipt by mail will constitute valid and legal service.

In Nevada, a printed certified copy of the order of the engineer's determination must be sent by registered mail, or delivered in person, to each person who has filed proof of claim, or who has become interested as a contestant or intervener. In both states, the court by order fixes the time for the appearing in court. In Oregon, certified copies of this order are filed in the office of the county clerk of each county in which the stream or any of its tributaries are situated, and each claimant or owner who has appeared in the proceeding must be notified of the time and place of the hearing by registered mail. The date of the hearing must not be less than 40 days subsequent to the date of the order. Proof of service must be made and filed in the circuit court as soon as possible after mailing the notices. In Nevada, a copy of the certified copy of the order fixing the time and place of hearing in court must be sent by registered mail to each party who has filed proof of claim, or who has become interested in a contest or as an intervener. The order must also be published at least once a week for 4 consecutive weeks in some paper of general circulation in each county in which the stream or stream system, or any part thereof, is situated. Proof of service by mail and publication must be filed with the clerk of the court.

In Oregon, at any time prior to the hearing, any party or parties jointly interested may file exceptions in writing to the order of determination. In Nevada, such exceptions may be filed at any time not less than 5 days prior to the hearing, by interested parties who are aggrieved or dissatisfied. On the day set for hearing, if no exceptions have been filed, the court must enter a decree affirming the order of determination. This provision is the same in both states. If exceptions are filed, a hearing will be had, at which in Oregon the parties may be heard by counsel, and in Nevada all parties in interest who have filed exceptions may appear in person or by counsel. In both states, a certified copy of the order of determination, together with the original evidence and a copy of the testimony, must be filed in court.

In Oregon, the proceedings must be as nearly as may be like those in a suit in equity. The court may, if necessary, refer the case, or any part thereof, to the division superintendent for such further evidence as it may direct, and the board may be required to make a fur-

ther determination subject to the court's instructions. In Nevada, all proceedings shall be in accordance with the rules governing civil actions, as near as may be. For further information the court may employ one or more qualified persons to investigate and report thereon under oath; if necessary it may refer the case, or any part thereof, for such further evidence to be taken by the state engineer as it may direct, and may require a further determination by him.

The reasons for upholding the Oregon act against the criticism that it does not afford due process of law, advanced by the United States District Court of Oregon and the Supreme Court of the United States, apply so exactly and with such convincing force to the Nevada statute now under consideration, that it is unnecessary to add more than the following excerpts and authorities in support of my conclusion that the Nevada act complies with the constitutional guaranties of due process:

"The state statute provides for notice to the various claimants of every step in the proceedings before the water board, and gives them an opportunity to be heard, to produce testimony in support of their claims and such contest as they may initiate. It also requires the determination of the board and the original testimony taken by it to be filed with the state court for its consideration, and gives the parties 30 days thereafter in which to file exceptions to the determination of the board, provides that they may be heard by counsel upon the consideration of such exceptions, that the court may, if necessary, remand the case to the board for further evidence, and after a final hearing the court shall enter a decree affirming or modifying the orders of the board, from which decree an appeal may be taken to the Supreme Court in like manner and effect as in other cases in equity. It thus furnishes interested parties not only adequate opportunity to be heard before the water board, but provides for a judicial review by the courts before the determination becomes final, and therefore is not a denial of due process of law or the equal protection of the laws. O. R. R. & N. Co. v. Fairchild, 224 U. S. 510, 32 Sup. Ct. 535, 56 L. Ed. 863." Pacific Live Stock Co. v. Lewis (D. C.) 217 Fed. 95, 98.

"The plaintiff insists that the statute is repugnant to the due process of law clause of the Fourteenth Amendment: First, because it requires a claimant, at his own expense, to assert and prove his claim before the board, and to pay an extortionate fee for having it considered—all under penalty of forfeiting his claim if he refuses; * * * second, because it permits the board to accept and act upon the sworn statements of claimants taken ex parte and upon the data set forth in the unsworn report of the engineer, without, as is asserted, affording any opportunity for showing their true value, or the want of it, by cross-examination or otherwise; * * * and, third, because it requires that the board's findings and order, although only administrative in character, be followed and given effect in the distribution of the water pending the action of the circuit court upon them. A serious fault in this contention is that it does not recognize the true relation of the proceeding before the board to that before the court. They are not independent or unrelated, but parts of a single statutory proceeding, the earlier stages of which are before the board and the later stages before the court. In notifying claimants, taking statements of claim, receiving evidence, and making an advisory report the board merely paves the way for an adjudication by the court of all the rights involved. As the Supreme Court of the state has said, the board's duties are much like those of a referee. And see Oregon R. & N. Co. v. Fairchild, 224 U. S. 510, 526, 527 [32 Sup. Ct. 535, 56 L. Ed. 863]. All the evidence laid before it goes before the court, where it is to be accorded its proper weight and value. That the state, consistently with due process of law, may thus commit the preliminary proceedings to the board, and the final hearing and adjudication to the court, is not debatable. And so the fact

that the board acts administratively, and that its report is not conclusive, does not prevent a claimant from receiving the full benefit of submitting his claim and supporting proof to the board. That he is to do this at his own expense affords no ground for objection; on the contrary, it is in accord with the practice in all administrative and judicial proceedings. * * * The purpose with which it is exacted is explained in * * * Pacific Live Stock Co. v. Cochran, 73 Or. 417, 429, 430 [144 Pac. 668]. * * * In our opinion, the charge is not extortionate and its exaction is not otherwise inconsistent with due process of law. Upon examining the statute and the decisions of the Supreme Court of the state construing and applying it, we are persuaded that it is not intended that the board shall accept and act upon anything as evidence that is devoid of evidential value or in respect of which the claimants concerned are not given a fair opportunity to show its true value, or the want of it, in an appropriate way. On the contrary, the statute discloses a fixed purpose to secure timely notice to all claimants of every material step in the proceeding and full opportunity to be heard in respect of all that bears upon the validity, extent, and priority of their claims. And while it is true, according to the concessions at the bar, that the sworn statements of claim are taken ex parte in the first instance, it also is true that they are then opened to public inspection, that opportunity is given for contesting them, and that upon the hearing of the contests full opportunity is had for the examination of witnesses, including those making the statements, and for the production of any evidence appropriate to be considered. Thus the fact that the original statements are taken ex parte becomes of no moment. And while it is true that the state engineer's report is accepted as evidence, although not sworn to by him, it also is true that the measurements and examinations shown therein are made and reported in the discharge of his official duties and under the sanction of his oath of office, and that timely notice of the date when they are to begin is given to all claimants. The report becomes a public document, accessible to all, and is accepted as prima facie evidence, but not as conclusive. In re Willow Creek, 74 Or. 592, 628 [144 Pac. 505, 146 Pac. 475]. * * * Considering the nature of the report, and that claimants may oppose it with other evidence, it is plain that its use as evidence is not violative of due process. Meeker & Co. v. Lehigh Valley R. R. Co., 236 U. S. 412, 430 [35 Sup. Ct. 328, 59 L. Ed. 644, Ann. Cas 1916B, 691]. The provision that the water shall be distributed in conformity with the board's order pending the adjudication by the court has the sanction of many precedents in the legislation of Congress and of the several states, notably in the provision in the Interstate Commerce Act directing that the orders of the Commission shall be effective from a date shortly after they are made, unless their operation be restrained by injunction. These legislative precedents, while not controlling, are entitled to much weight, especially as they have been widely accepted as valid. Although containing no provision for an injunction, the statute under consideration permits the same result to be reached in another way, for it declares that the operation of the board's order 'may be stayed in whole or in part' by giving a bond in such amount as the judge of the court in which the proceeding is pending may prescribe. * * * It is not, therefore, as if the requirement were absolute. As has been seen, the order is made only after adequate notice and full opportunity to be heard, and, when made, is, with reason, deemed prima facie correct. It relates to flowing water, to the use of which there are conflicting claims. Unless diverted and used, the water will pass on and be lost. No claimant is in possession and all assert a right to take from the common source. In this situation we think it is within the power of the state to require that, pending the final adjudication, the water shall be distributed, according to the board's order, unless a suitable bond be given to stay its operation. Such a requirement is not arbitrary, does not take from one and give to another, and is not otherwise offensive to a right conception of due process." Pacific Live Stock Co. v. Lewis, 241 U. S. 440, 451, 36 Sup. Ct. 637, 642 (60 L. Ed. 1084); Oregon Lumber Co. v. East Fork Irr. Dist., 80 Or. 568, 157 Pac. 963; In re Willow Creek, 74 Or. 592, 144 Pac. 505, 514, 146 Pac. 475.

The objection that the act is repugnant to sections 20 and 21, article 4, of the Nevada Constitution, is without merit. The act applies equally and uniformly to every stream and stream system and to every water user in the state. Water rights are unique. The act of the Legislature in placing them in a class by themselves is neither unreasonable nor arbitrary; it is based on a real and substantial difference between water rights and other classes of property. Southern Pac. Co. v. Bartine (C. C.) 170 Fed. 725, 742; Cooley's Const. Lim. (7th Ed.) p. 554. Section 45 of the act provides that any suit which may be brought in any district court for determination of water rights—

"may at any time after its inception, in the discretion of the court, be transferred to the state engineer for determination as in this act provided."

The contention of counsel, that the district court under this section is bound to transfer such a case to the state engineer for determination, and thus, of necessity, will be deprived of its jurisdiction, is a proposition to which I am unable to yield my assent. However, the question is one which may well be put aside until such an issue is actually raised in some appropriate proceeding.

By section 51, the state engineer is required, after the final determination, to issue to each person represented in such determination a certificate containing, among other things, "a description of the land by legal subdivisions" to which water appropriated for irrigation is appurtenant. Section 59 requires any person, who wishes to change the place of diversion, manner of use, or place of use of water already appropriated, to apply to the state engineer for a permit.

It was settled long before the passage of this act that no appropriator of water can change the point of his diversion, increase the amount of water diverted, or transfer water to a tract of land other than that for which the appropriation was made prior to the change. It is impossible to construe this provision of the statute in relation to certificates in such a manner that it can be said to impair or deprive plaintiffs of any vested right.

Let an order be entered dismissing the bill of complaint. The injunction heretofore issued will be dissolved. Each party will have 20 days to take such steps as may seem advisable.